
DISTRICT COURT
... OF LOUISIANA
...VED

NOV 2 0 2006

ROBERT H. ...WELL, CLERK
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| JIMMY J. MADDOX | CIVIL ACTION NO. 06-1543 |
| VS. | SECTION P |
| BURL CAIN, WARDEN | JUDGE DRELL |
| | MAGISTRATE JUDGE KIRK |

## REPORT AND RECOMMENDATION

Before the court is a petition for writ of *habeas corpus* (28 U.S.C. §2254) filed on September 8, 2006 by *pro se* petitioner Jimmy J. Maddox. Petitioner is an inmate in the custody of Louisiana's Department of Public Safety and Corrections. He is incarcerated at the Louisiana State Penitentiary, Angola, where he is serving consecutive sentences totaling 52 years which were imposed following his 2003 convictions for manslaughter and simple burglary in the Thirty-Fifth Judicial District Court, Grant Parish.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the court. For the following reasons it is recommended that the petition be **DENIED** and **DISMISSED WITH PREJUDICE** because the petition is time-barred by the provisions of 28 U.S.C. §2244(d).

### *Statement of the Case*

On March 3, 2003 petitioner was indicted by the Grant Parish Grand Jury and charged with the September 18, 2002 murder of Cleveland Ray Cannon, Jr. [doc. 1-4, p. 3] Subsequently he was charged *via* Bill of Information with the September 18, 2002 simple burglary of a vehicle belonging to Harvey Shelton. [*id.*, p. 4]

On June 23, 2003 petitioner plead guilty to manslaughter and simple burglary pursuant to a plea agreement that provided for the imposition of consecutive sentences of 40 and 12 years. [*id.*, pp. 7-18; doc. 1-5, pp. 1-6] (The prosecutor articulated the terms of the plea agreement as follows: "After the plea of guilty entered to the responsive verdict of manslaughter, we've agreed that Mr. Maddox would be sentenced to 40 years on that count, 12 years on the simple burglary, to run consecutive." Thereafter, the court advised petitioner, "... Mr. Maddox, you understand that consecutive means that you are pleading guilty, and you're going to serve 52 years in prison? 40 years plus 12 years?" To which the petitioner responded, "Yes, sir." [doc. 1-4, pp. 15-16])

During the colloquy, the prosecutor stated, "... we would like the record to reflect that no promise has been made to the actual length of the sentence. There may be good time, or that he may serve some period of time less than 52 years, but we have not

made any representation as to what exactly ..." [doc. 1-4, p. 16]

Furthermore, the factual basis of the plea was articulated as follows:

> ... on September 18th, at approximately 12:00 A.M., there was a disturbance call at 277 Highway 502 in Georgetown. Officers responding heading north on 165 toward Georgetown, they later determined or discovered that Mr. Maddox had taken a .22 pistol from the truck of a Harvey Shelton, which was ... contained within the truck ... That's the burglary....
>
> At that time, he and two other of his friends that had come over with him from Texas left that particular location. At some point shortly thereafter, Mr. Maddox by his own statement forced those two individuals out of the car, because he knew he was fixing to do something crazy. He proceeded to drive down the road ... 165 South toward Pollock. Getting close to Pollock at approximately the same time, Mr. Cannon was traveling on that particular stretch of highway, having been at the hospital that day. Mr. Maddox ... from the evidence, it appears that Mr. Maddox was passing Mr. Cannon's vehicle. He stated by his own admission that he was shooting this .22 caliber pistol at anything and everything along the way along that route. The evidence indicates that he at some point shot into the truck that Mr. Cannon was driving. That the truck that Mr. Cannon was driving in left the roadway and crashed into a tree and in the ditch. After that point, Mr. Maddox immediately turned right on Highway 8 and proceeded to Bethel Church Road, which he ... his car either quit running or he shut his car down and stayed there until the next morning. The next morning, officers ... and during this same time frame, officers learned that it wasn't an actual traffic accident that had occurred involving Mr. Cannon. That a bullet had actually ... was the cause of death in this particular case. The officers then located Mr. Maddox on the side of the road, walking back from Bethel Church Road, at which time Mr. Maddox made several statements, asking officers if he had killed anyone, if he had killed anyone in that car, statements such as that, and he gave a statement to police officers about the accident that had occurred the night before. The ballistics of the particular pistol were tested at the crime lab, and

they came back as consistent with the gun that was used
in the shooting of Mr. Cannon. [doc. 1-4, pp. 16-17]

Petitioner's attorney then noted,

> ... we generally agree with the statement of facts.
> There are some particulars that we disagree with, but I
> don't think would have actual ... would make the plea
> unfounded, but there's certain things that we disagree
> with ... First of all, Your Honor, Mr. Maddox asked ...
> it's my understanding that when he was questioned on
> the road, he asked if anybody had been hurt, because he
> had no knowledge of anyone actually being killed, and
> the question was about being hurt and not killed. the
> other was he disagrees with the statement that he was
> firing from his vehicle ... [id., p. 18]

Nevertheless, petitioner (and his attorney) did admit, as
the trial court stated, "... to taking a pistol and shooting a
man..." [id.; doc. 1-5, p. 1]; and, petitioner personally
apologized to his victim's family stating, "All I want to say is
that I'm sorry for your loss. I did not mean to do what happened,
and nothing that I can say can change it, but I do want you to
know I'm sorry, and I can't say any more. I'm sorry. I want you
to know that. That's all." [id., p. 3]

Finally, petitioner was sentenced in accordance with the
plea agreement that had earlier been recited. [id., pp. 3-5]

On July 2, 2003 petitioner filed a *pro se* Motion to
Reconsider Sentence. Therein he alleged that (1) as a first
offender he was entitled to have the judge consider mitigating
circumstances; (2) he was not guilty of manslaughter and should
have been allowed to plead to a lesser charge; (3) his court-
appointed attorney "pressured" petitioner and his family to

accept the plea agreement offered by the state and thereby to avoid a certain life sentence; (4) petitioner's son was recently born; (5) petitioner should have received concurrent and not consecutive sentences; (6) the widow of petitioner's victim had forgiven him; (7) contrary to promises made by his attorney, petitioner would not be eligible for diminution of sentence and would not be eligible for parole until he had served 85% of his sentence; and, (8) petitioner's counsel should have requested a change of venue. [doc. 1-5, pp. 7-10] On July 24, 2003, the motion was dismissed. [*id.*, p. 11]

On October 6, 2004 petitioner filed a "Designation of Record;" on that same date the court released evidence to petitioner. On October 19, 2004 petitioner "... received [exculpatory] evidence that he was not informed of ... prior to accepting a plea..." [doc. 1-3, p. 7] The evidence consisted of documents entitled "Results and Conclusions" prepared by the North Louisiana Criminalistics Laboratory, a chain of custody log dated September 18, 2002, and an offense report authored by Cpl. Bruce Phillips and dated September 18, 2002. [doc. 1-5, pp. 12-14][1] However, in his memorandum in support of the Application for

---

[1] According to the Offense Report, "On 9-18-02, I, Cpl. Bruce Phillips responded to a one vehicle accident on U.S. 165 near Dyson Creek Rd. Upon arrival, I was advised that the driver (later identified as Cleveland Cannon, Jr.) was unresponsive with no breath and no pulse... Med Express transported Cannon to Rapides Regional Hospital. Officer Futrell received word from Rapides Regional that Cannon had been shot... While looking in the bed of Cannon's vehicle, I saw a .22 caliber shell casing... Det. Graves secured the shell casing as evidence..." [doc. 1-5, p. 14]

Post-Conviction Relief, petitioner alleged that "... <u>after</u> <u>petitioner plead guilty, he received his criminal file from his</u> <u>attorney. In the file a report stating that the bullet retrieved</u> <u>from the victim could not be marked for positive identification</u>." [doc. 1-5, p. 33]

On February 21, 2005 petitioner filed an Application for Post-Conviction Relief in the Thirty-Fifth Judicial District Court. [doc. 1-5, pp. 15-37] He argued the following claims for relief, (1) "Petitioner was denied his Sixth Amendment right to a fair trial, when the trial court errored [sic] in accepting a guilty plea without first informing petitioner that he would not be eligible for release until he has served at least eighty-five percent of his sentence." [doc. 1-5, pp. 29-32] (2) "Petitioner did not voluntarily and intelligently plead guilty when counsel told him that the bullet ballistic test (of the bullet that was found in the victim that petitioner was accused of killing on September 18, 2002) matched the gun that petitioner had fired on September 18, 2002. In light of this factor, petitioner did not

---

The "Chain of Custody Log" originated with the Jefferson Parish Coroner's Office and revealed that a bullet removed from the right chest of Mr. Cannon was released by Karen F. Rossing on September 18, 2002 at 12:45 p.m. to W.R. Crawford; Crawford released the evidence to Dean Nugent who in turn released it to Det. Brad Suddith. [doc. 1-5, p. 13]

The North Louisiana Criminalistics Laboratory's "Results and Conclusions" stated, "The bullet in Item 1 was determined to have the same class characteristics as the reference bullets fired from the 22 caliber Browning pistol, Model Buck Mark, Serial Number 655NR21000 in Item 2A; however the bullet in Item 1 retained insufficient individual markings for positive identification. The eleven (11) fired 22 caliber cartridge cases in Items 3-10 were determined to have been fired in the 22 caliber Browning Pistol, Model Buck Mark, Serial Number 655NR21000 in Item 2A."

voluntarily and intelligently plead guilty when counsel gave
petitioner false assurances that he will only have to serve a
third of the sentence imposed if he plead guilty to reduce
charges. Whereas petitioner on the ineffective advice of the
defense counsel plead guilty to a crime in which the prosecutor
had no concrete evidence linking petitioner to the alleged
crime." [id., pp. 32-35](3) "The trial judge did not have
jurisdiction to accept guilty plea of petitioner as his second
degree murder indictment was not properly amended." [id., pp. 35-
36]

   In due course, counsel was appointed to represent petitioner
and on September 15, 2005 an evidentiary hearing was convened.
[doc. 1-5, p. 26]

   At the hearing, the trial court denied relief on Claim 3
finding that there was no need to amend the indictment since
petitioner pled guilty to a lesser included offense. [doc. 1-6,
p. 33] The remaining claims were denied for lack of "any direct
evidence to assume that Mr. Goorely (trial counsel), who is
certified by the State of Louisiana, to proceed in cases greater
than this, act[ed] with anything less than his normal
diligence..." and the court concluded that there was "... no
reason to grant an application for post-conviction relief..."
[doc. 1-7, p. 10]

   On September 19, 2005 petitioner filed a pro se Notice of

Intent to seek writs in the Third Circuit Court of Appeals. The
court set a return date for December 13, 2005. [doc. 1-7, pp. 13-
14] Petitioner filed his writ application on November 9, 2005.
[doc. 1-7, p. 15-24]

> On November 28, 2005, the Third Circuit denied writs
> noting, "Relator's application submitted to this court
> is deficient. The application does not comply with the
> Uniform Rules – Courts of Appeal, Rule 4 and La. Code
> Crim. P. art. 912.1. The application does not contain a
> certificate of service to the trial judge, a copy of
> the judgment, order or ruling, a copy of the transcript
> of the evidentiary hearing held on Relator's
> application for post-conviction relief and a copy of
> the pertinent court minutes. Accordingly, Relator's
> writ application to this court is denied, without
> prejudice, on the showing made." State of Louisiana v.
> Jimmy Jack Maddox, KH 05-01398 (La. App. 3 Cir.
> 11/28/20050.

Petitioner did not attempt to cure the deficiencies noted by
the Third Circuit. Instead, on December 6, 2005 he submitted a
writ application to the Louisiana Supreme Court. [doc. 1-7, pp.
26-41][2]

On August 18, 2006, the Supreme Court denied relief without
comment. State of Louisiana ex rel. Jimmie J. Maddox v. State of
Louisiana, 2006-0411 (La. 8/18/2006), 935 So.2d 150.

On September 5, 2006 petitioner signed and submitted his
federal petition for writ of *habeas corpus*. It was mailed on
September 6, 2006 and received and filed on September 8, 2006.
[doc. 1-1] Petitioner argues three claims for relief,

---

[2] The documents purporting to be petitioner's writ application are
illegible.

(1) Evidence was withheld that shed new light on this case according to <u>Brady v. Maryland</u>, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), <u>Kyles v. Whitley</u>, 514 U.S. 419, 115 S.Ct. 1555.

(2) Guilty plea agreement was entered into involuntarily and unintelligently due to Claim 1. <u>Flores v. Estelle</u>, 578 F.2d 80 (5th Cir. 1979). A defendant's recitals on record at time of entering plea does not foreclose proof at later time that those were themselves involuntary. <u>State v. Galliano</u>, 396 So.2d 1288 (La. 1981). Although the defendant in this case had been informed of, and waived, the three (3) constitutional rights mentioned in <u>Boykin</u>, we held that the court had the power notwithstanding a record waiver of constitutional rights, to determine whether other factors present at the time of guilty plea, whether inside or outside the plea colloquy record, were sufficient to render the plea involuntary or unintelligently.

(3) Counsel failed to investigate this case, and rendered incompetent advise. The 6th and 14th Amendments to the United States Constitution were violated. Due Process and Equal Protection.

### *LAW AND ANALYSIS*

### *1. Timeliness under § 2244(d)(1)(A)*

This petition was filed after the effective date of the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA). Therefore, the court must apply the provisions of AEDPA, including the timeliness provisions. <u>Villegas v. Johnson</u>, 184 F.3d 467, 468 (5th Cir. 8/9/1999); <u>In Re Smith</u>, 142 F.3d 832, 834, citing <u>Lindh v. Murphy</u>, 521 U.S. 320, 336, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997).

Title 28 U.S.C. §2244(d)(1)(A) was amended by AEDPA to provide a one-year statute of limitations for the filing of

applications for writ of *habeas corpus* by persons in custody

pursuant to the judgment of a State court. This limitation period

generally runs from "...the date on which the judgment became

final by the conclusion of direct review or the expiration of the

time for seeking such review..." 28 U.S.C. §2244(d)(1)(A).[3]

However, the statutory tolling provision set forth in 28

U.S.C. §2244(d)(2) provides that the time during which a properly

filed application for post-conviction relief was pending in state

court is not counted toward the limitation period. Ott v.

Johnson, 192 F.3d 510, 512 (5th Cir. 1999); Fields v. Johnson,

159 F.3d 914, 916 (5th Cir. 1998); 28 U.S.C. §2244(d)(2). Any

lapse of time before the proper filing of an application for

post-conviction relief in state court is counted against the one-

year limitation period. Villegas, 184 F.3d 467, citing Flanagan

v. Johnson, 154 F.3d 196, 197 (5th Cir.1998).

Federal courts may raise the one-year time limitation *sua*

*sponte*. Kiser v. Johnson, 163 F.3d 326 (5th Cir. 1999).

Petitioner did not appeal his conviction and sentence.[4] For

---

[3] Petitioner relies upon the reckoning period codified at 28 U.S.C. §2244(d)(1)(D), and suggests that his AEDPA limitations period should be reckoned from "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." A discussion of that contention follows.

[4] Indeed, under Louisiana law, petitioner could not appeal his conviction since he entered a guilty plea. A plea of guilty normally waives all non-jurisdictional defects in the proceedings prior to the plea. State v. Crosby, 338 So.2d 584 (La.1976). Further, petitioner could not appeal his sentence. See La. C.Cr.P. art. 881.2(A)(2) which provides, "The defendant cannot appeal or seek review of a sentence imposed in conformity with a plea

AEDPA purposes, petitioner's judgment of conviction and sentence "became final by the conclusion of direct review or the expiration of the time for seeking such review" [28 U.S.C. § 2244(d)(1)(A)], thirty days following the July 24, 2003 denial of his motion to reconsider sentence [5] or, on or about August 24, 2003. Under 28 U.S.C. § 2244(d)(1) he had one year, or until August 24, 2004 to file his federal *habeas* petition.

Petitioner cannot rely upon the tolling provisions of §2244(d)(2) because he did not file his first post-conviction motion until October, 2004 when he filed his "Designation of Record," and by that time more than one-year had elapsed from the date his conviction became final. Further, as stated above, the lapse of time before the proper filing of the application for post-conviction relief must be counted against the one-year limitation period. Villegas, 184 F.3d 467, citing Flanagan v. Johnson, 154 F.3d 196, 197 (5th Cir.1998).

In other words, petitioner's *habeas*, is clearly time-barred if the limitations period is reckoned as provided by 28 U.S.C. §2244(d)(1)(A).

---

agreement which was set forth in the record at the time of the plea." Petitioner agreed to the imposition of the sentence he received.

[5] See La. C.Cr.P. art. 914(b)(2) provides, "The motion for an appeal must be made no later than: (2) Thirty days from the ruling on a motion to reconsider sentence filed pursuant to Article 881.1, should such motion be filed."

## 2. *Timeliness under § 2244(d)(1)(D)*

However, petitioner contends that the timeliness of his
*habeas* petition should be reckoned in accordance with 28 U.S.C.
§2244(d)(1)(D) which provides that the one-year limitations
period may be reckoned from "...the date on which the factual
predicate of the claim or claims presented could have been
discovered through the exercise of due diligence..."
Petitioner's claims concerning discovery of the subject evidence
are somewhat ambiguous. In his federal *habeas corpus* petition he
claims that he discovered the factual predicate of his ballistics
claim on October 19, 2004 following the filing of his October
6,2004 "Designation of Record." [doc. 1-3, p. 7] However, in his
Application for Post-Conviction Relief, he claimed, "... after
petitioner plead guilty, he received his criminal file from his
attorney. In the file a report stating that the bullet retrieved
from the victim could not be marked for positive identification."
[doc. 1-5, p. 33] That his attorney had knowledge of the
ballistics evidence is further confirmed by the testimony of
Jimmie D. White, the Assistant District Attorney who prosecuted
the petitioner. At the hearing on petitioner's Application for
Post-Conviction Relief, White testified that he and petitioner's
attorney engaged in "open file discovery."  White testified that
the "open file discovery" included the police reports and the
ballistics reports. Finally, he testified,

I can tell you, in this particular case, I do recall
with Mr. Goorley that <u>everyone in the room was familiar
that the ballistics on the gun did not completely
match, as, as far as a, a positive 100 percent match.
Everyone in the room was aware that that was the case
in ... that case</u>... There has been no allegations ever,
ever ... that any other weapon was used or any other
person was ... had done any shooting in this particular
case. And we ... the ... Mr. Goorley had ample ... both
ample time and knowledge of the, of the, of the ...
both the strength in the case that the state had, as
well as the, the, I, I guess, the weaknesses of the
case. One of the weaknesses of the case was the
ballistics of the .22 that was used did not conclusive
... conclusively establish that it had come from that
gun. [doc. 1-6, pp. 48-49]

Thus, insofar as petitioner seeks to rely on §2244(d)(1)(D),
the date on which the facts supporting the claim became known or
could have become known through the exercise of due diligence, he
cannot demonstrate that <u>neither he nor his attorney had knowledge
of</u> the ballistics testing at the time of his guilty plea.

Petitioner's own pleadings confirm that his attorney had a
copy of police reports and the ballistics results, and the
testimony of Assistant District Attorney White confirms that the
ballistics issue was known, at least by counsel, during the plea
negotiations. Of course, that knowledge must be imputed to
petitioner.

Further, in order to be eligible for tolling under
§2244(d)(1)(D), petitioner may not rely simply on the date that
the newly discovered facts became known; he must show when these
facts <u>could have become known through the exercise of due</u>

diligence.

    In the context of the AEDPA, the terms "due diligence" have
been clearly defined. In Johnson v. Dretke, 442 F.3d 901, 908
(5th Cir. 2006), the court made the following observation about
the term as it is used in the context of second and successive
habeas petitions, "... due diligence is measured against an
objective standard, as opposed to the subjective diligence of the
particular petitioner of record. The burden to make such a
showing, of course, remains the petitioner's. [citations omitted;
emphasis supplied]" To paraphrase the court, the plain language
of the statute requires that we determine not whether petitioner
has shown that the subject evidence could not have been
discovered previously through petitioner's exercise of due
diligence but instead whether the subject evidence could have
been discovered previously through the exercise of due diligence.
Id.

    Based upon the evidence submitted by petitioner, the
undersigned must conclude that petitioner's attorney had
possession of the ballistics evidence prior to the date
petitioner pled guilty. Petitioner admits that the evidence was
in his attorney's file and that he became aware of the evidence
after his guilty plea when he received the file from counsel.
[doc. 1-5, p. 33] He does not otherwise explain why he waited
until October 2004, more than one year following his conviction,

to begin the process of obtaining records from the court. In any event, there can be no question but that the documents were wholly available to petitioner, that he was, or should have been aware of the inconclusive nature of the evidence, and that the evidence <u>could</u> have been discovered with the exercise of due diligence long before the date petitioner claims to have discovered them.[6] Compare <u>Balagula v. United States</u>, 73 F. Supp.2d 287 (E.D.N.Y. 1999).

In short, petitioner's *habeas corpus* claims are time-barred regardless of the reckoning period used and dismissal of the petition on that basis is recommended.

**ACCORDINGLY,**

**IT IS RECOMMENDED** that this petition for *habeas corpus* should be **DENIED AND DISMISSED WITH PREJUDICE** because petitioner's claims are barred by the one-year limitation period codified at 28 U.S.C. §2244(d).

---

[6] Of course, careful reading of the ballistics evidence does not support petitioner's claim that the evidence is exculpatory. According to the crime lab results, the bullet removed from the chest of the victim, while retained insufficient individual markings for positive identification nonetheless "... was determined to have <u>the same class characteristics</u> as the reference bullets fired from the 22 caliber Browning pistol, Model Buck Mark, Serial Number 655NR21000..." Further, the 11 spent cartridges recovered from the vehicle occupied by petitioner were all determined to have been fired from the pistol in question. [doc. 1-5, p. 12] Finally, when reciting the factual basis of the plea, the prosecutor specifically noted, "The ballistics of the particular pistol were tested at the crime lab, and they came back as <u>consistent with the gun</u> that was used in the shooting..." [doc. 1-4, p. 17] Contrary to petitioner's assertion, the State admitted that the ballistics evidence was "consistent with" and not an absolutely positive match. Thus, petitioner was, or should have been aware, of the deficiencies of the ballistic evidence at the latest, on the date of his plea.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within ten (10) days after being served with a copy of any objections or response to the District judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See,* Douglass v. United Services Automobile Association, 79 F.3d 1415 (5th Cir. 1996).

**THUS DONE AND SIGNED** in Chambers at Alexandria, Louisiana, this _____ day of _____, 2006.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE